UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
JAMES HARRELSON,                         :
                                         :
           Plaintiff,                    :
                                         :   CASE NO.: _____
                                         :
    -against-                            :
                                         :
TCF FINANCIAL CORPORATION, CRAIG         :
R. DAHL, PETER BELL, WILLIAM F.          :
BIEBER, THEODORE J. BIGOS, KAREN L.      :
GRANDSTRAND, GEORGE G. JOHNSON,          :
RICHARD H. KING, VANCE K.                :
OPPERMAN, ROGER J. SIT, JULIE H.         :
SULLIVAN, BARRY N. WINSLOW, and          :
THERESA M. H. WISE,                      :
                                         :
           Defendants.                   :
---------------------------------------- X

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff James Harrelson ("Plaintiff"), on behalf of himself, by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1.  This is an action brought by Plaintiff against TCF Financial Corporation ("TCF" or the "Company") and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with TCF, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9. Plaintiff's claims arise in connection with the proposed merger of Chemical Financial Corporation ("Chemical") with TCF.

2.  On January 27, 2019, Chemical and TCF entered into an Agreement and Plan of

1

Merger (the "Merger Agreement"), pursuant to which TCF will merge with and into Chemical, with Chemical as the surviving corporation (the "Proposed Transaction"). Immediately following the merger or at such later time as the parties may mutually agree, Chemical's wholly-owned subsidiary, Chemical Bank, a Michigan banking corporation, will merge with and into TCF's wholly-owned subsidiary, TCF National Bank, a national banking association, with TCF National Bank as the surviving bank.

3.      Under the terms of the Merger Agreement, each outstanding share of TCF common stock will be converted into the right to receive 0.5081 shares of Chemical common stock (the "Merger Consideration").

4.      On March 29, 2019, in order to convince TCF's public common shareholders to vote in favor of the Proposed Transaction, Defendants authorized the filing of a materially incomplete and misleading Form S-4 Registration Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for TCF; (ii) the valuation analyses performed by TCF's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"), in support of its fairness opinion; and (iii) the potential conflict of interest J.P. Morgan faced as a result of the prior work its performed for TCF.

6.      The special meeting of the Company's shareholders to vote on the Proposed Transaction is quickly approaching.  It is therefore imperative that the material information that has been omitted from the Proxy is disclosed prior to the special meeting of TCF shareholders so Plaintiff can properly exercise his corporate voting rights.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to TCF's public common shareholders sufficiently in advance of the special meeting of the Company's shareholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because Defendants are found or are inhabitants or transact business in this District. Indeed, TCF's common stock is listed and traded on the New York Stock Exchange, which is also headquartered in this District. *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).

3

## PARTIES

11. Plaintiff is, and has been continuously throughout all times relevant hereto, the holder of TCF common stock.

12. Defendant TCF is a Delaware corporation that maintains its principal place of business at 200 Lake Street East, Mail Code EXO-01-G, Wayzata, Minnesota 55391-1693. TCF's common shares are traded on the New York Stock Exchange under the ticker symbol "TCF."

13. Defendant Craig R. Dahl is, and has been at all relevant times, a director of the Company, and currently serves as the Chairman of the Board and Chief Executive Officer of TCF.

14. Defendant Peter Bell is, and has been at all relevant times, a director of the Company.

15. Defendant William F. Bieber is, and has been at all relevant times, a director of the Company.

16. Defendant Theodore J. Bigos is, and has been at all relevant times, a director of the Company.

17. Defendant Karen L. Grandstrand is, and has been at all relevant times, a director of the Company.

18. Defendant George G. Johnson is, and has been at all relevant times, a director of the Company.

19. Defendant Richard H. King is, and has been at all relevant times, a director of the Company.

20. Defendant Vance K. Opperman is, and has been at all relevant times, a director of the Company.

21. Defendant Roger J. Sit is, and has been at all relevant times, a director of the Company.

22. Defendant Julie H. Sullivan is, and has been at all relevant times, a director of the Company.

23. Defendant Barry N. Winslow is, and has been at all relevant times, a director of the Company.

24. Defendant Theresa M. H. Wise is, and has been at all relevant times, a director of the Company.

25. The defendants identified in paragraphs 12 through 23 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with TCF, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

26. TCF Financial Corporation is a national bank holding company, headquartered in Wayzata, Minnesota.  Through its wholly-owned subsidiary TCF National Bank, TCF operated 314 bank branches in Illinois, Minnesota, Michigan, Colorado, Wisconsin, Arizona and South Dakota at December 31, 2018.  TCF provides a full range of consumer-facing and commercial services, including consumer banking services in 47 states, commercial banking services in 42 states, commercial leasing and equipment financing in all 50 states and, to a limited extent, in foreign countries and commercial inventory financing in all 50 states and Canada and, to a limited extent, in other foreign countries.

27. Chemical is a financial holding company headquartered in Detroit, Michigan, that was incorporated in the State of Michigan in August 1973.  Chemical relocated its headquarters from Midland, Michigan to Detroit, Michigan effective July 25, 2018, and is the largest banking company headquartered in Michigan.  Chemical's common stock is listed on NASDAQ under the symbol "CHFC."  As of December 31, 2018, Chemical had total consolidated assets of $21.5

billion, total loans of $15.3 billion, total deposits of $15.6 billion and total shareholders' equity of $2.8 billion. Chemical operates through a single subsidiary bank, Chemical Bank. As of December 31, 2018, Chemical Bank had 212 banking offices located in Michigan, Ohio and northern Indiana.

28.  On January 27, 2019, the Board caused the Company to enter into the Merger Agreement.

29.  Pursuant to the terms of the Merger Agreement, each outstanding share of TCF common stock will only be converted into 0.5081 shares of Chemical common stock.

30.  On January 28, 2019, TCF issued a press release announcing the Proposed Transaction, which stated in relevant part:

> **Chemical Financial Corporation and TCF Financial Corporation Announce Merger of Equals to Create a Premier Midwest Bank Headquartered in Detroit**
>
> - Creates a premier bank in the Midwest with $45 billion in assets
> - Enhances competitive position by delivering the scale, profitability and predictable performance required to compete and win in an evolving market
> - Merger combines two complementary platforms – strengthening each company's standalone growth profile
> - EPS accretion, relative to consensus estimates, of 17% to Chemical shareholders and 31% to TCF shareholders; 2.7-year tangible book value per share earn back
> - Combined company retains shared values including deep community ties, customer-centric focus and commitment to performance
> - Significant operation centers in Minneapolis, Midland and Chicago
>
> DETROIT & WAYZATA, Minn.--(BUSINESS WIRE)--Chemical Financial Corporation ("Chemical") (NASDAQ: CHFC) and TCF Financial Corporation ("TCF") (NYSE: TCF) today announced the signing of a definitive agreement under which the companies will combine in an all-stock merger of equals transaction. Under the terms of the agreement, which was unanimously approved by the boards of directors of both companies, TCF will merge into Chemical, and the combined holding company and bank will operate under the TCF name and brand following the closing of the transaction.

The merger combines two complementary banking platforms to create a premier Midwest bank that will be uniquely positioned to capitalize on market opportunities and broaden the channels and customers it serves through increased scale and expanded product offerings. The combined company will have approximately $45 billion in assets, $34 billion in total deposits and more than 500 branches across nine states, including four of the top 10 Midwest markets. It will leverage the strengths of Chemical's community banking and wealth management capabilities with TCF's large deposit franchise and expertise in wholesale lending on a national basis.

"With a shared strategic vision and increased scale and capabilities, our two complementary banking platforms will be positioned to better serve our customers and communities," said Chemical's Chairman Gary Torgow. "The combination of TCF and Chemical creates the largest midcap bank in the Midwest, poised to deliver double-digit EPS accretion for each set of shareholders, significant cost synergies, top-tier return metrics, a more diversified balance sheet and a lower risk profile. We also share a deep commitment to supporting and giving back to the communities we serve."

TCF Chairman, CEO and President Craig Dahl said, "We are confident that this merger will enhance our ability to deliver stronger and more sustainable growth and greater value creation than either company could achieve alone. The new TCF will have attractive positions in both its product suite and market footprint as well as a more diversified loan portfolio and increased lending capabilities across asset classes, geographies and industry verticals. Through improved profitability and earnings predictability, we will be able to reinvest in the business to drive multiple growth engines, enhance our ability to compete in the next generation of banking and sustain consistent return on capital for shareholders. We believe the combined company will also create new opportunities for our employees and enable us to attract and retain top talent."

**Strategic Benefits of the Merger**

**Enhanced scale and capabilities:** The combined organization will be strategically positioned to capitalize on market opportunities and better serve its customers throughout several of the largest, most attractive markets in the Midwest. Together, the companies will have the scale to better invest, compete and outperform by leveraging leading market positions and complementary products. Limited overlap of markets and product suites will benefit customers through a consistent go-to-market approach and minimal disruption.

**Accelerates achievement of each company's strategic priorities:** Complementary operations with limited overlap will broaden the opportunities to drive sustainable growth and increase market share. TCF's strength in national lending verticals complements Chemical's core in-market commercial lending and wealth management offerings. The two banks' shared strengths in infrastructure, digital platforms, and mortgage banking will enhance the combined organization's position while improving efficiency.

**More balanced deposit mix and loan portfolio:** The combination creates a more diversified deposit mix between retail and commercial business lines and a more balanced loan portfolio across geographies, asset classes and commercial industries. On a combined basis, the company expects to have increased capacity for loan growth while maintaining its current risk thresholds.

**Complementary values and community focus:** Both organizations share a legacy of developing deep community ties, along with core values centered on customer service, accountability, and adaptability to market changes. The combined organization will have a stronger, deeper leadership team with complementary expertise to drive enhanced operational performance, strategic growth, and risk management. In addition, the combined bank will continue to provide philanthropic, civic, and economic development support to the communities in which it operates.

**Financial Benefits of the Merger**
The transaction is projected to deliver 17% EPS accretion to Chemical and 31% EPS accretion to TCF by 2020, with a tangible book value earn-back period of 2.7 years. Pro forma merged company financial metrics are based on each company's stand-alone consensus median analyst estimates, estimated combined company cost synergies, anticipated purchase accounting adjustments, and the expected merger closing time-frame. On a pro forma basis, the business is expected to deliver top-tier operating and return metrics with cost savings on a fully-phased in basis, including:

- Significant operation centers in Minneapolis, Midland and Chicago
- Return on Average Assets of approximately 1.6%; and
- Efficiency ratio of approximately 53%.

In addition, the transaction is expected to generate approximately $180 million in annual run-rate cost synergies by 2020, with minimal reductions in branches.

**Transaction Details**
Under the terms of the agreement, TCF shareholders will receive

0.5081 shares of Chemical common stock for each share of TCF common stock based on a fixed exchange ratio, equivalent to $21.58 per TCF share based on the closing price as of January 25, 2019. Each outstanding share of 5.70% Series C Non-Cumulative Perpetual Preferred Stock of TCF will be converted into the right to receive one share of a newly created series of preferred stock of Chemical. Upon completion of the deal, TCF and Chemical shareholders will own 54% and 46% of the combined company, respectively, on a fully diluted basis.

### **Governance and Leadership**

The combined company will be headquartered in Detroit and maintain a significant operating presence in Minneapolis as well as Midland and Chicago. The combined company will be led by:

- Gary Torgow, who will serve as executive chairman of the board of directors;
- Vance Opperman, who is the current lead independent director of TCF Financial Corporation's board of directors, will serve as lead independent director;
- Craig Dahl, who will serve as CEO and president;
- Dennis Klaeser, who will serve as CFO;
- Brian Maass, who will serve as deputy CFO and treasurer; and
- David Provost will become chairman of the combined bank and Tom Shafer will become president and COO of the combined bank.

Additional leadership team members will be comprised of highly experienced and proven executives who reflect the strengths and capabilities of both banks and will share equally in the integration process.

The combined company's board of directors will have sixteen directors, consisting of eight directors from TCF and eight directors from Chemical.

**The Proxy Omits Material Information**

31. On March 29, 2019, Defendants filed a materially incomplete and misleading Proxy with the SEC. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents or omits

9

material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

33. First, the Proxy fails to provide sufficient information regarding financial projections for TCF.

33. Specifically, the Proxy states that J.P. Morgan conducted a valuation analysis that was based on the TCF internal forecasts for the period **2019 through 2024**. However, the *Unaudited Financial Forecasts* section of the Proxy selectively discloses financial projections for TCF's projected Net Income Available to Common Shareholders and Earnings Per Share for the fiscal years **2019 and 2020**. *See* Proxy at 74. As a result, the Proxy materially misleads Company shareholders by failing to **completely and fully** disclose financial projections concerning TCF.

34. If a Proxy discloses financial projections and valuation information, such projections must be **complete and accurate**. The question here is not the duty to speak, but liability for not having spoken enough. With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—**but it may not choose half-truths**. Accordingly, Defendants have selectively disclosed *some* of the projections utilized by J.P. Morgan, but have omitted the complete and accurate iterations of the projections that were reviewed by the Board and relied upon by J.P. Morgan when preparing its fairness opinion. Thus, their omission renders the TCF projections disclosed in the *Unaudited Financial Forecasts* section of the Proxy on pages 72 through 75 misleading.

35. Second, with respect to J.P. Morgan's *Dividend Discount Analysis* for TCF, the Proxy is materially misleading and incomplete because it fails to disclose: (i) TCF's five-year projections, including TCF's estimated net income for the period 2021 through 2024 and TCF's estimated dividend streams for the period 2019 through 2024, which were fundamental inputs

underlying the analysis; (ii) TCF's range of terminal value; and (iii) the inputs and assumptions underlying the selection of the range of discount rates of 9.0% to 11.0%.  *See* Proxy at 90.

36. Similarly, with respect to J.P. Morgan's *Dividend Discount Analysis* for Chemical, the Proxy is materially misleading and incomplete because it fails to disclose: (i) Chemical's five-year projections, including Chemical's estimated net income for the period 2021 through 2024 and Chemical's estimated dividend streams for the period 2019 through 2024, which were fundamental inputs underlying the analysis; (ii) Chemical's range of terminal value; and (iii) the inputs and assumptions underlying the selection of the range of discount rates of 9.0% to 11.0%.  *See* Proxy at 92.

37. These key inputs are material to TCF shareholders, and their omission renders the summaries of J.P. Morgan's *Dividend Discount Analysis* for TCF and Chemical incomplete and misleading.  As one highly-respected law professor explained regarding the fundamental flaws with valuation analyses bankers perform where the banker takes management's forecasts and then makes several key choices, each "key choice" can significantly affect the final valuation.  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Consequently, the "*dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion* **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**."  *Id.* at 1577-78 (emphasis added).  Without the above-mentioned information, TCF shareholders cannot evaluate for themselves the reliability of J.P. Morgan's *Dividend Discount Analysis* for TCF and Chemical, make a meaningful determination of whether the implied equity value per share ranges reflect the true values of TCF and Chemical or, instead, was the result of an unreasonable judgment by J.P. Morgan, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

38. With respect to J.P. Morgan's *TCF Public Trading Multiples Analysis*, the Proxy fails to disclose the individual multiples J.P. Morgan calculated for each of the companies utilized in the analysis. *See* Proxy at 88-89. A fair summary of the *TCF Public Trading Multiples Analysis* requires the disclosure of the individual multiples for each company utilized; merely providing the range of multiples that a banker selected and then applied to calculate implied equity values per share is insufficient, as shareholders are unable to assess whether the banker selected the appropriate companies, or, instead, selected certain, inapplicable companies in order to make the Merger Consideration appear more favorable. Accordingly, the omission of the individual multiples renders the summary of the J.P. Morgan's *TCF Public Trading Multiples Analysis* set forth on pages 88 through 89 of the Proxy materially incomplete and misleading.

39. Similarly, J.P. Morgan's *Chemical Public Trading Multiples Analysis*, the Proxy fails to disclose the individual multiples for each company utilized. *See* Proxy at 92. For the same reasons mentioned above, the failure to disclose the individual multiples renders the summary of the analysis materially incomplete and misleading.

40. Finally, the Proxy also fails to disclose or misstate material information relating to the potential conflict of interest J.P. Morgan faced as a result of the prior work it's performed for TCF.

41. Specifically, the Proxy states that "[d]uring the two year period preceding the date of the J.P. Morgan opinion, the aggregate fees received by J.P. Morgan from TCF were approximately $0.9 million." Proxy at 94. However, the Proxy fails to disclose the specific work J.P. Morgan performed for TCF and the fees received in connection which each service it provided.

42. Such information is material to TCF shareholders. Indeed, it is imperative for shareholders to be able to understand what factors might influence the financial advisor's analytical efforts. A financial advisor's own financial interest in a proposed merger must be

carefully considered in assessing how much credence to give its analysis. A reasonable shareholder would want to know about any economic motivations the advisor, employed by a board to assess the fairness of the merger to the shareholders, might have. Especially when that motivation could rationally lead the advisor to favor a deal at a less than optimal price, because the procession of a deal was more important to him than approving a deal at a truly fair price to shareholders. Consequently, the omission of the specific work J.P. Morgan performed for TCF and the fees received in connection with each service provided renders the Proxy incomplete and misleading.

43. Defendants' failure to provide the foregoing material information renders the statements in the Proxy false and/or materially misleading.

44. In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the upcoming special meeting of the Company's shareholders, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

45. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection

of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

47. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

48. The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

49. Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) financial projections for TCF; (ii) the valuation analyses performed by J.P. Morgan in support of its fairness opinion; and (iii) the potential conflict of interest J.P. Morgan faced as a result of the prior work its performed for TCF.

50. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's common shareholders although they could have done so without extraordinary effort.

51.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that J.P. Morgan reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by J.P. Morgan, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review J.P. Morgan's analyses in connection with their receipt of the fairness opinions, question J.P. Morgan as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

52.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and

review of the Company's financial projections.

53. TCF is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

54. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the special meeting of the Company's shareholders. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

55. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

56. The Individual Defendants acted as controlling persons of TCF within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of TCF, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

57. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

58. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

59. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

60. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

61. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

62. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and/or permanently enjoining Defendants and their counsel, agents,

employees, and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

  B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

  C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

  D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

  E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 10, 2019  **MONTEVERDE & ASSOCIATES PC**

  By: */s/ Miles D. Schreiner*
  Miles D. Schreiner (MS-2518)
  The Empire State Building 350 Fifth
  Avenue, Suite 4405 New York, NY 10118
  Tel:(212) 971-1341
  Fax:(212) 202-7880
  Email: jmonteverde@monteverdelaw.com

  *Attorneys for Plaintiff*